

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Criminal Division*
*Fraud Section*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza 950*
*New York, New York 10007*

*Bond Building*
*1400 New York Ave, NW 11th*
*Floor*
*Washington, DC 20005*

September 21, 2017

David M. Stuart, Esq.
Rachel G. Skaistis, Esq.
Cravath, Swaine, & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Angela T. Burgess, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

Re:   *United States v. Telia Company AB* Deferred Prosecution Agreement

*17 CR 581*

Dear Counsel:

Defendant Telia Company AB (the "Company"), by its undersigned representatives, pursuant to authority granted by the Company's Board of Directors, and the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Southern District of New York (the "Fraud Section and the Office"), enter into this deferred prosecution agreement (the "Agreement"), the terms and conditions of which are as follows:

### Criminal Information and Acceptance of Responsibility

1.      The Company acknowledges and agrees that the Fraud Section and the Office will file the attached one-count criminal Information in the United States District Court for the Southern District of New York charging the Company with one count of conspiracy to commit

an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1, 78dd-2, and 78dd-3. In so doing, the Company: (a) knowingly waives its right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Southern District of New York.

2. The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the attached Statement of Facts, and that the allegations described in the Information and the facts described in the attached Statement of Facts are true and accurate. Should the Fraud Section and the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the attached Statement of Facts in any proceeding by the Fraud Section or the Office, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the attached Statement of Facts at any such proceeding.

## Term of the Agreement

3. This Agreement is effective for a period beginning on the date on which the Information is filed and ending three years from that date (the "Term"). The Company agrees, however, that, in the event the Fraud Section and the Office determine, in their sole discretion,

2

that the Company has knowingly violated any provision of this Agreement, an extension or

extensions of the Term may be imposed by the Fraud Section and the Office, in their sole

discretion, for up to a total additional time period of one year, without prejudice to the Fraud

Section and the Office's right to proceed as provided in Paragraphs 13-17 below. If the Court

rejects the Agreement, all the provisions of the Agreement shall be deemed null and void, and

the Term shall be deemed to have not begun.

## Relevant Considerations

4.      The Fraud Section and the Office enter into this Agreement based on the

individual facts and circumstances presented by this case and the Company, including:

a.      the Company did not receive voluntary disclosure credit because it did not

voluntarily and timely disclose to the Fraud Section and the Office the conduct described in the

Statement of Facts attached hereto as Attachment A;

b.      the Company received full credit for its cooperation with the Fraud

Section and the Office's investigation, including conducting a thorough internal investigation;

making regular factual presentations to the Fraud Section and the Office; providing to the Fraud

Section and the Office all relevant facts known to it, including information about the individuals

involved in the conduct described in the attached Statement of Facts; voluntarily assisting in

making former employees available for interviews in the United States; producing documents to

the Fraud Section and the Office from foreign countries in ways that were consistent with

relevant foreign data privacy and security laws; and collecting, analyzing, translating, and

organizing voluminous evidence and information for the Fraud Section and the Office;

c.      the Company engaged in extensive remedial measures, including

terminating all individuals involved in the misconduct; terminating all individuals who had a

3

supervisory role over those engaged in the misconduct, including every member of the
Company's board who took part in the decision to enter Uzbekistan, or failed to detect the
corrupt conduct described in the attached Statement of Facts; creating a new and robust
compliance function throughout the company; implementing a comprehensive anti-corruption
program; and overhauling the Company's corporate governance structure;

        d.     the Company has enhanced and has committed to continuing to enhance
its compliance program and internal controls, including ensuring that its compliance program
satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate
Compliance Program);

        e.     based on the Company's remediation and the state of its compliance
program, the Fraud Section and the Office determined that an independent compliance monitor
was unnecessary;

        f.     the nature and seriousness of the offense conduct, including the large
amount of bribes paid, totaling approximately $331 million, and the involvement of high-level
management;

        g.     the Company has no prior criminal history;

        h.     the Company has agreed to continue to cooperate with the Fraud Section
and the Office as described in Paragraph 5 below; and

        i.     accordingly, after considering (a) through (h) above, the Company
received an aggregate discount of 25% off of the bottom of the otherwise-applicable U.S.
Sentencing Guidelines fine range in connection with this Agreement.

<u>**Future Cooperation and Disclosure Requirements**</u>

5.     The Company shall cooperate fully with the Fraud Section and the Office in any

4

and all matters relating to the conduct described in this Agreement and the attached Statement of

Facts, and other conduct related to corrupt payments under investigation by the Fraud Section

and the Office at any time during the Term of this Agreement, subject to applicable law and

regulations, until the later of the date upon which all investigations and prosecutions arising out

of such conduct are concluded, or the end of the Term specified in paragraph 3. At the request of

the Fraud Section and the Office, the Company shall also cooperate fully with other domestic or

foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral

Development Banks ("MDBs"), in any investigation of the Company, its subsidiaries or

affiliates, or any of its present or former officers, directors, employees, agents, and consultants,

or any other party, in any and all matters relating to the conduct described in this Agreement,

Attachment A, and other conduct related to possible corrupt payments under investigation by the

Fraud Section and the Office at any time during the Term of this Agreement. The Company

agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the

following, subject to local law and regulations, including relevant data privacy and national

security laws and regulations:

        a.     The Company shall truthfully disclose all factual information not

protected by a valid claim of attorney-client privilege or attorney work product doctrine with

respect to its activities, those of its affiliates, and those of its present and former directors,

officers, employees, agents, and consultants, including any evidence or allegations and internal

or external investigations, about which the Company has any knowledge or about which the

Fraud Section and the Office may inquire. This obligation of truthful disclosure includes, but is

not limited to, the obligation of the Company to provide to the Fraud Section and the Office,

upon request, any document, record or other tangible evidence about which the Fraud Section

5

and the Office may inquire of the Company.

      b.      Upon request of the Fraud Section and the Office, the Company shall designate knowledgeable employees, agents or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

      c.      The Company shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

      d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

      6.      In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegations of conduct that may constitute a violation of the FCPA anti-bribery provisions had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Fraud Section and

6

the Office.

## **Payment of Monetary Penalty**

7.     The Fraud Section and the Office and the Company agree that application of the

United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the

applicable fine range yields the following analysis:

      a.     The 2016 USSG are applicable to this matter.

      b.     Offense Level.  Based upon USSG § 2C1.1, the total offense level is 46,

calculated as follows:

| | |
|---|---|
| (a)(2) Base Offense Level | 12 |
| (b)(1) Multiple Bribes | +2 |
| (b)(2) Value of benefit received more than $250,000,000 | +28 |
| (b)(3) Public official in a high-level decision-making position | +4 |
| **TOTAL** | 46 |

      c.     Base Fine.  Based upon USSG § 8C2.4(a)(2), the base fine is

$457,169,977 (as the pecuniary gain exceeds the fine indicated in the Offense Level Fine Table,

namely $150,000,000).

      d.     Culpability Score. Based upon USSG § 8C2.5, the culpability score is 8,

calculated as follows:

7

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(1) | the organization had 5,000 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +5 |
| (g) | The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |

**TOTAL**                                                                          8

Calculation of Fine Range

| | |
|---|---|
| Base Fine | $457,169,977 |
| Multipliers | 1.60(min)/3.20(max) |
| Fine Range | $731,471,963 / $1,462,943,926 |

The Company agrees to pay total monetary penalties in the amount of $548,603,972 (the "Total Criminal Penalty"), $500,000 of which will be paid as a criminal fine and $40,000,000 of which will be paid as forfeiture by the Company on behalf of its Uzbek subsidiary, Coscom LLC, as part of the subsidiary's guilty plea. The Company will pay $274,603,972 of the Total Criminal Penalty to the United States Treasury within ten business days of the sentencing hearing by the Court of Telia's subsidiary Coscom LLC in connection with its guilty plea and plea agreement entered into simultaneously herewith, except that the parties agree that any criminal penalties that might be imposed by the Court on Telia's subsidiary Coscom LLC in connection with its guilty plea and plea agreement, including the contemplated fine of $500,000 and $40,000,000 in forfeiture, will be deducted from the $274,603,972. The Total Criminal Penalty will be offset by up to $274,000,000 for any criminal penalties paid to the Organization of the Public Prosecution Service of the Netherlands ("Dutch Prosecution Service") in connection with

8

the settlement of the Company's potential prosecution in the Netherlands. Should any amount of such payment to the Dutch Prosecution Service be returned to the Company or any affiliated entity for any reason, the remaining balance of the Total Criminal Penalty will be paid to the U.S. Treasury within ten business days of such event. The Company and the Fraud Section and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including the Company's full cooperation and extensive remediation in this matter. The Total Criminal Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Fraud Section and the Office that $548,603,972 is the maximum penalty that may be imposed in any future prosecution, and the Fraud Section and the Office are not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Fraud Section and the Office agree that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of the Total Criminal Penalty. The Company shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the attached Statement of Facts.

## Conditional Release from Liability

8.     Subject to Paragraphs 13-15, the Fraud Section and the Office agree, except as provided in this Agreement, that it will not bring any criminal or civil case against the Company or any of its direct or indirect affiliates, subsidiaries, or joint ventures, other than the Company's

9

Uzbek subsidiary Coscom LLC, relating to any of the conduct described in the attached
Statement of Facts or the criminal Information filed pursuant to this Agreement. The Fraud
Section and the Office, however, may use any information related to the conduct described in the
attached Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction
of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other
proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating
to a violation of any provision of Title 26 of the United States Code.

     a.    This Agreement does not provide any protection against prosecution for
any future conduct by the Company.

     b.    In addition, this Agreement does not provide any protection against
prosecution of any individuals, regardless of their affiliation with the Company.

## Corporate Compliance Program

9.    The Company represents that it has implemented and will continue to implement
a compliance and ethics program designed to prevent and detect violations of the FCPA and
other applicable anti-corruption laws throughout its operations, including those of its affiliates,
agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities
include interacting with foreign officials or other activities carrying a high risk of corruption,
including, but not limited to, the minimum elements set forth in Attachment C.

10.    In order to address any deficiencies in its internal accounting controls, policies,
and procedures, the Company represents that it has undertaken, and will continue to undertake in
the future, in a manner consistent with all of its obligations under this Agreement, a review of its
existing internal accounting controls, policies, and procedures regarding compliance with the
FCPA and other applicable anti-corruption laws. Where necessary and appropriate, the Company

10

agrees to modify its existing compliance program, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption laws. The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

## Deferred Prosecution

11.     In consideration of the undertakings agreed to by the Company herein, the Fraud ' Section and the Office agree that any prosecution of the Company for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term. To the extent there is conduct disclosed by the Company that is not set forth in the attached Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

12.     The Fraud Section and the Office further agree that if the Company fully complies with all of its obligations under this Agreement, the Fraud Section and the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire. Within six months of the Agreement's expiration, the Fraud Section and the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agree not to file charges in the future against the Company based on the conduct described in this Agreement and the attached Statement of Facts.

11

## Breach of the Agreement

13. If, during the Term of this Agreement, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraphs 9 and 10 of this Agreement and Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (f) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Fraud Section and the Office become aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section and the Office have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Fraud Section and the Office in the U.S. District Court for the Southern District of New York or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Fraud Section and the Office's sole discretion. Any such prosecution may be premised on information provided by the Company. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Fraud Section and the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that

12

the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Fraud Section and the Office are made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

14.    In the event the Fraud Section and the Office determine that the Company has breached this Agreement, the Fraud Section and the Office agree to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the Fraud Section and the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Fraud Section and the Office shall consider in determining whether to pursue prosecution of the Company.

15.    In the event that the Fraud Section and the Office determine that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Fraud Section and the Office or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of

13

Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any

such statements or testimony made by or on behalf of the Company prior or subsequent to this

Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.

The decision whether conduct or statements of any current director, officer, or employee, or any

person acting on behalf of, or at the direction of, the Company, will be imputed to the Company

for the purpose of determining whether the Company has violated any provision of this

Agreement shall be in the sole discretion of the Fraud Section and the Office.

16.     The Company acknowledges that the Fraud Section and the Office have made no

representations, assurances, or promises concerning what sentence may be imposed by the Court

if the Company breaches this Agreement and this matter proceeds to judgment. The Company

further acknowledges that any such sentence is solely within the discretion of the Court and that

nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

17.     Thirty days prior to the end of the period of deferred prosecution specified in this

Agreement, the Company, by the Chief Executive Officer of the Company and the Chief

Financial Officer of the Company, will certify to the Fraud Section and the Office that the

Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement.  Each

certification will be deemed a material statement and representation by the Company to the

executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to

have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form of Company

18.     Except as may otherwise be agreed by the parties in connection with a particular

transaction, the Company agrees that in the event that, during the Term of the Agreement, the

Company sells, merges, or transfers all or substantially all of its business operations, or all or

14

substantially all of the business operations of its subsidiaries involved in the conduct described in the attached Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include, as determined in the sole discretion of the Fraud Section and the Office (considering all relevant factors related to the transaction and the Agreement), in any contract for such sale, merger, transfer, or other change in corporate form provisions to bind the purchaser, or any successor in interest thereto, to any or all obligations described in this Agreement. The Company shall provide notice to the Fraud Section and the Office at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form in order to give the Fraud Section and the Office an opportunity to determine if such change in corporate form would impact the terms or obligations of the Agreement.

19. Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, if, during the Term of the Agreement, the Company undertakes any change in corporate form that involves business operations that are material to the consolidated financial statements of the Company as a whole, or to the financial statements of its subsidiaries involved in the conduct described in the attached Statement of Facts, as they exist as of the date of this Agreement, whether such transaction is structured as a sale, asset sale, merger, transfer, or other similar transaction, the Company shall provide notice to the Fraud Section and the Office at least thirty (30) days prior to undertaking any such transaction. If such transaction (or series of transactions) is completed and has the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Fraud Section and the Office (considering all relevant factors related to the transaction and the Agreement), it shall be deemed a breach of this Agreement subject to Paragraphs 13-17 of this Agreement.

### Public Statements by Company

20.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts.  Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 13-15 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the attached Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Fraud Section and the Office.  If the Fraud Section and the Office determines that a public statement by any such person contradicts in whole or in part a statement contained in the attached Statement of Facts, the Fraud Section and the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification.  The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the attached Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the attached Statement of Facts.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

21.     The Company agrees that if it or any of its direct or indirect subsidiaries or

affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section and the Office and the Company; and (b) whether the Fraud Section and the Office has any objection to the release.

22.     The Fraud Section and the Office agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Fraud Section and the Office is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such authorities.

## Limitations on Binding Effect of Agreement

23.     This Agreement is binding on the Company and the Fraud Section and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Fraud Section and the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

## Notice

24.     Any notice to the Fraud Section and the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Deputy Chief, FCPA Unit, Fraud Section, Criminal Division, U.S.

17

Department of Justice, 1400 New York Ave, NW, 11th Floor, Washington, DC 20005 and Chief, Criminal Division, United States Attorney's Office for the Southern District of New York, 1 St. Andrew's Plaza New York City, NY 10007. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Jonas Bengtsson (or his successor), Senior Vice President and General Counsel, Telia Company AB, 169 94 Solna, Sweden, and David Stuart, Cravath, Swaine, & Moore, LLP, Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019-7475. Notice shall be effective upon actual receipt by the Fraud Section and the Office or the Company.

## Complete Agreement

25.    This Agreement sets forth all the terms of the agreement between the Company and the Fraud Section and the Office. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Fraud Section and the Office, the attorneys for the Company, and a duly authorized representative of the Company.

18

**AGREED:**

Date: 21 Sept. 2017

By: _____
Jonas Bengtsson
Senior Vice President and General Counsel
Telia Company AB

Date: 9/21/17

By: _____
David M. Stuart
Rachel G. Skaistis
Cravath, Swaine, & Moore, LLP

Angela T. Burgess
Davis Polk

Counsel to Telia Company AB

**FOR THE DEPARTMENT OF JUSTICE:**

SANDRA L. MOSER
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

Date: September 21, 2017

By: _____
Nicola J. Mrazek
Senior Litigation Counsel
Ephraim Wernick
Trial Attorney

JOON H. KIM
Acting United States Attorney
Southern District of New York

Date: September 21, 2017

By: _____
Edward Imperatore
Assistant United States Attorney

_____
Joan M. Loughnane
Deputy United States Attorney

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Telia Company AB (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Senior Vice President and General Counsel for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: 21 Sept. 2017

Telia Company AB

By: _____
Jonas Bengtsson
Senior Vice President and General Counsel

20

**CERTIFICATE OF COUNSEL**

I am counsel for Telia Company AB (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Senior Vice President and General Counsel of the Company. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 9/21/17

By: _____

David M. Stuart
Rachel G. Skaistis
Cravath, Swaine, & Moore

Angela T. Burgess
Davis Polk

Counsel for Telia Company AB

21